UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| JOHN B. MYLES, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | CAUSE NO.: 2:08-CV-202 TS |
| MARK C. LATERZO, *et al.*, | ) |  |
| Defendants. | ) |  |

**OPINION AND ORDER**

John B. Myles, a prisoner proceeding pro se, filed a 42 U.S.C. § 1983 Prisoner Complaint alleging that his "March 12, 2008, conviction[1] and 54 year sentence" was obtained through the Defendants' violation of his constitutional rights. The Plaintiff names the Lake County public defender who represented him, an assistant Lake County prosecuting attorney, two police officers who investigated the criminal case, and unidentified United States Marshals. The Plaintiff seeks monetary damages for each day of his imprisonment. [Pl's Complaint, DE 2-6]. This matter is before the Court pursuant to its statutory screening obligation. *See* 28 U.S.C. § 1915A.

**SUMMARY OF FACTS**

Shortly after Walgreen employee, Nathaniel Thompson, opened for business at 7:00 a.m. on November 9, 2006, an armed gunman entered and pointed a gun at him. Earlier, when he arrived at work, Thompson had observed the man across the street "pacing back and forth." [Exhibits, DE 1-2 at 7]. Placing the gun to Thompson's head, the robber directed him to the back

---

[1] While Myles does not disclose the conviction offense, the record suggests it is robbery.

office to open the store's safe. After Thompson gave him the money, the robber placed it in a bag. Then, the robber forced Thompson and another employee, Staci Gambin, to lie on the floor where he handcuffed the two together. The robber told Gambin and Thompson that he would kill them if they moved. Sometime after they heard the office door close, the pair rose from the floor, which caused the toy handcuffs they were wearing to fall off. Thompson described the robber as a black man wearing eyeglasses. Along with a physical description, he provided a detailed account of the clothing the robber wore. [*Id.* at 7].

The location of the store where the November 9, 2006, robbery occurred does not appear in the record. Almost a month earlier, on October 4, 2006, a Walgreens in Schererville was robbed. No details of the Schererville robbery appear in the record. But, based on that incident, Schererville law enforcement authorities charged the Plaintiff with two counts of robbery in addition to two counts of confinement. [DE 1-2 at 8]. The Schrerville police executed their search and arrest warrants at 1700 5th Avenue, apt. 2BW, in Gary, Indiana. [DE 1-2 at 8]. Although it is not clear, it appears that the Plaintiff claims he was arrested without a warrant for the November 9 robbery.

**COMPLAINT ALLEGATIONS**

The Plaintiff complains that Public Defenders Mark C. Laterzo and David Schneider violated his Sixth and Fifth Amendment rights between May 27, 2007, and March 10, 2008, when they refused to hire an independent expert to reexamine suspicious finger print evidence. He alleges that Laterzo conspired with Prosecutor Mark Watson to convict him when they proceeded to trial after learning on March 6, 2008, that fingerprint evidence had been "severely

2

tainted, and fabricated" and when they ignored his "plea that he object to state motion for an 'additional' DNA sample." (Pl.'s Compl. 3.) He claims that they also conspired to violate his Sixth Amendment rights when they refused to give him certified copies of certain documents, did not subpoena and depose an "original" suspect, and did not return the phone call of an alibi witness. (Pl.'s Compl. 4.) The Plaintiff also complains that Laterzo violated his Sixth and Fourteenth Amendment rights when he did not file a motion to quash his questionable arrest or to suppress the "facially deficient search warrant and grossly tampered evidence." (Pl.'s Compl. 3.)

The Plaintiff's claims against Thomas Grabowski, an officer with the Hammond police department, are that he used false information about a DNA match to instigate a photo line-up, conducted an unlawfully suggestive line-up, and towed and impounded two of his vehicles without a search warrant or arrest warrant. He also alleges that it was a violation of his Fourth and Fifth Amendment rights for Grabowski to tell United States Marshals to arrest him without an arrest warrant. The Plaintiff claims that the Marshal also violated his rights by arresting him without an warrant and requiring him to go to the Hammond City Jail in the freezing rain in his pajamas and without a hat or socks.

The Plaintiff's Complaint also makes claims against Brian Vandenburgh, a Schererville police officer. He alleges that Vandenburgh fabricated and tampered with evidence by changing dates and altering documents regarding fingerprints. He claims that Vandenburgh gave intentionally false testimony at a deposition regarding a witness identification.

The Plaintiff requests money damages for each day that he has been incarcerated, and for physical and emotional suffering and losses.

## SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6), which provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

> In order to state a cause of action under 42 U.S.C. § 1983, . . . the plaintiff must allege that some person has deprived him of a federal right [and] . . . he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (quotation marks, ellipsis, citations and footnote omitted).

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he bases his claim, Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at n.3 (quotation marks and citation omitted). Nevertheless, "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quotation marks and citations omitted). However, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp.*, 127 S. Ct. at 1965 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quotation marks omitted)).

## DISCUSSION

**A.     Unlawful Arrest**

The Plaintiff claims that he was unlawfully arrested on January 12, 2007, in violation of his constitutional rights. Liberally construing the Complaint, the Plaintiff presents two basis for the claim that he was unlawfully arrested. One is that he was subjected to a warrantless arrest. The other is that probable cause to arrest him did not exist because the Defendant officers fabricated and/or tainted the evidence tending to establish his identity as the perpetrator of the two robberies. However, for both potential claims, the Plaintiff's pleading, including the attached exhibits, preclude any recovery. *See McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (recognizing that "if a plaintiff pleads facts which show he has not claim, then he has pled himself out of court"); *Thomas v. Farley*, 31 F.3d 557, 558–59 (7th Cir. 1994) (noting that if a

5

plaintiff "pleads particulars, and they show that he has not claim, then he is out of luck—he has pleaded himself out of court").

Specifically, the Plaintiff first contends that Grabowski instigated a photographic line-up by telling Vandenburgh that a laboratory analyst said DNA from a crime scene was a "positive match" with him. The Plaintiff contends that, although false, this representation about the DNA test results led to " his arrest on Jan.12, 2007, and conviction." [DE 1 at 4]. The Plaintiff also claims that Grabowski presented the false information about the DNA "positive match" in supporting affidavits for search and charge warrants. [DE 1-2 at 3]. *See Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006) ("police officer who files a false report may be liable for false arrest if the filing of the report leads to a seizure in violation of the Fourth Amendment"); *McCullah v. Gadert*, 344 F.3d 655 (7th Cir. 2003) (allegedly fabricated incident report may be actionable under Fourth Amendment).

The Plaintiff attached an unidentified document to the Complaint that he implies is part of Grabowski's purportedly false affidavit. In addition to an account of the November 9, 2006, robbery, that document contains the following statements:

> The Indiana State Police Lab DNA technician Sharon Pollik notified Det. Grabowski that the latex gloves had been processed for DNA and the DNA had come back with a positive match to A[sic] John Myles with a DOB 10-8-45. The actual paper work for the comparison would not be forth coming until a later time.
>
> The Indiana State Police Laboratory processed the recovered handcuffs and recovered a latent print. The latent print was identified, and that latent print belonged to John B. Myles DOB 10-8-45, SID 1032897. See Exhibit "A."

[DE 1-2 at 7].

The Plaintiff's "Supplemental Statement," which he apparently submitted to the state court judge in an effort to dismiss his appointed attorney, amplifies his claim. [DE 1-2 at 1-5]. In

that statement, the Plaintiff declares that the laboratory technician, Sharon Pollik, indicated she did not speak with Grabowski. But Pollik simply denied recalling that she had spoken with the officer. Notwithstanding the Plaintiff's interpretation of the dialogue quoted in the statement, he does not challenge Pollik's other testimony that she told another officer that she had an unconfirmed "hit" on the Plaintiff. While this suggests she did not use the exact phrase "positive match" (and did not recall speaking with Grabowski), it also shows forensic test results positively, if not absolutely, pointed to the Plaintiff. [DE 1-2 at 3]. The test results are some proof of the Plaintiff's identity as the robber independent of Grabowski's allegedly false claims. "The existence of probable cause bars a Section 1983 action based on false arrest or imprisonment, regardless of the motives of the arresting officers." *Schertz v. Waupaca County*, 875 F.2d 578, 584 (7th Cir. 1989). Although a finding of probable cause based on a defendant's intentional misrepresentation or concealment of material facts provide a Fourth Amendment claim challenging the reasonableness of an arrest, *id.* at 582, probable cause existed in this case independent of any misrepresentation. Thus, the existence of probable cause bars the Plaintiff's § 1983 claim for false arrest.

The Plaintiff also claims that Grabowski "suggestively" placed a "different/contrasting photo of him" where Thompson, the victim of the second Walgreen robbery could see it. The Plaintiff indicates Thompson had "stated already that he could only be 90% sure of his identification." [DE 1 at 4]. Assuming the photograph rendered the line-up impermissibly suggestive, the Plaintiff acknowledges the witness was already 90% certain of his identification before he saw the offending photograph. So, at the most, that photograph could have increased the witness's confidence in his identification by 10%, from 90% to 100%. A 90% level of confidence in the identification of a criminal suspect is sufficient for probable cause to arrest.

7

The Seventh Circuit has consistently held that information from a single eyewitness or putative victim of a crime who seems reasonably credible provides probable cause for an arrest. *Woods v. City of Chi.*, 234 F.3d 979, 996 (7th Cir. 2000); *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439–40 (7th Cir. 1986). More significantly, this photographic line-up took place on January 17, 2008, after the Plaintiff's arrest on the warrant issued by Schererville authorities. Under the circumstances, that Grabowski allegedly tainted the photographic line-up does not state a claim. Because the pleadings affirmatively show DNA results established probable cause to believe the Plaintiff robbed the Walgreens store in November, he does not have a false arrest claim based upon fabrication or evidence tampering.

The Plaintiff complains that Vandenburgh altered the records pertaining to fingerprint evidence and handcuffs. He asserts that Vandenburgh did not memorialize the date he collected these items and delayed placing them into property for safekeeping. [DE 1 at 5]. These allegations amount to claims that Vandenburgh did not follow established procedures for handling evidence. [DE 1-2 at 4]. However, there is no constitutional requirement regarding the collection and maintenance of evidentiary records. Therefore, even if Vanderburgh's treatment of the evidence and handcuffs violated department policy, it does not state a claim under § 1983. *See Jackson v. City of Joliet*, 715 F.2d 1200, 1203 (7th Cir. 1983) (noting that § 1983 provides a remedy only for violations of federal law).

The Plaintiff's charge that unidentified federal marshals arrested him without a warrant is foreclosed by the documents that the Plaintiff submits. The Complaint allegations and attached exhibits establish that the marshals accompanied the Hammond and Schererville police officers on January 12, 2007, when the latter executed a search warrant, and arrested the Defendant

pursuant to a warrant for the Schererville robbery. [DE 1 at 5, DE 1-2 at 8]. Since the Plaintiff was taken into custody pursuant to a warrant, the seizure was not unreasonable.

The Plaintiff's assertion that after the officers arrested him they took him to the jail in the freezing rain, wearing only pajamas and without a hat or socks, must be analyzed under the Fourth Amendment's objectively unreasonable standard. *Cf. Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that a police officer's use of force during an arrest or other seizure is analyzed under the Fourth Amendment's prohibition against unreasonable seizures); *Lopez v. City of Chi.*, 464 F.3d 711, 719 (7th Cir. 2006) (holding that the protections of the Fourth Amendment apply at arrest and through the probable cause hearing). The reasonable inference from the Complaint is that the arresting Marshals did not allow the Plaintiff to change from his pajamas to other clothing, and did not allow him to put socks on and find a hat. Even if the Plaintiff was cold in this attire, he was merely being transported from his house, into a police car, and into another building where he would be housed. This nature and quality of this intrusion on the Plaintiff was not so unreasonable (many a person has ventured from their home in cold weather without a hat or socks) as to constitute a violation of the United States Constitution. *Cf. Tennessee v. Garner*, 471 U.S. 1, 3 (1985) (stating that determining whether a police officer has unreasonably seized a person by using excessive force involves balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion"). The Plaintiff's allegations are not sufficient to outweigh any interest that the arresting officers had in accomplishing arrest and transfer in the most safe and efficient manner practicable.

**B.    Impounded Vehicles**

Myles asserts that Grabowski and the "Hammond P. D." seized two of his vehicles without a search warrant "as possible evidence in a robbery." [DE 1 at 4].

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. In clarifying that the amendment addresses property interests in addition to privacy concerns, the Supreme Court defined the amendment's use of the term "seizure" as "some meaningful interference with an individual's possessory interests in [his] property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

An impoundment must be supported by probable cause, or be consistent with the police role as "caretaker" of the streets and completely unrelated to an ongoing criminal investigation. *South Dakota v. Opperman*, 428 U.S. 364, 370, n.5 (1976). The Plaintiff's exhibits attached to the complaint show two cars were towed from 1700 W. 5th Street on January 12, 2007, in Gary, Indiana, the same date and location where the Plaintiff was arrested. As the vehicles were seized at the time of the Plaintiff's arrest, sufficient probable cause existed to impound them. Later, Grabowski submitted an affidavit in support of a warrant to search the impounded vehicles. [DE 1-2 at 8].

Although the information about the impoundment is recorded on a form for abandoned vehicles, the explanation section plainly states the reason for the impoundment is "possible evidence in an [sic] robbery." [DE 1-2 at 13-4]. It is not reasonable to infer Grabowski used his caretaker role as a subterfuge to justify the impoundment, or did not otherwise act in accord with police policy. *See United States v. Duguay*, 93 F. 3d 346, 353–54 (7th Cir. 1996). Under the circumstances, the Plaintiff's arrest for robbery provided sufficient probable cause of criminal

10

activity to support impoundment of the vehicles; his charge that Grabowski impounded his vehicles without a warrant does not state a claim.

The Plaintiff also cites the Fifth Amendment in support of this claim. The Fifth Amendment to the Constitution provides that "(n)o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. But, the Fifth Amendment's due process clause applies only to federal government action. *Perry v. Sinderman*, 408 U.S. 593 (1972); *see also Massey v. Wheeler*, 221 F. 3d 1030, 1036 n.1. (7th Cir. 2000); *Craig v. Cohn*, 80 F. Supp. 2d 944, 947 (N.D. Ind. 2000) (citing *Huffaker v. Bucks County Dist. Attorney's Office*, 758 F. Supp. 287, 290 (E.D. Pa. 1991)). The seizure of the Plaintiff's vehicles by the Hammond Police Department does not state a federal claim for which relief may be granted.

Liberally construing this claim, the Plaintiff may be attempting to assert a claim under the Fourteenth Amendment, which provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. But, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq* .) provides an adequate post-deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). The availability of a state remedy forecloses any Fourteenth Amendment due process claim the Plaintiff may be trying to assert. *Id.*

11

## C. Claims Against the Prosecutor and the Public Defender

The Plaintiff alleges that the defense attorney appointed to represent him violated his constitutional rights because he conspired with the prosecutor to convict him and failed to challenge DNA, fingerprint, or other identification evidence, or to adequately investigate his defense.

Criminal defense attorneys cannot be sued under 42 U.S.C. § 1983 because a defense attorney, even an appointed public defender, does not act under color of state law. *Polk County v. Dodson*, 454 U.S. 312 (1981). The Plaintiff has no federal civil rights claim against his appointed defense attorney and these claims will be dismissed.

The Plaintiff alleges that the prosecutor violated his constitutional rights by proceeding to trial despite knowledge the fingerprint evidence was tainted. But, prosecutors have absolute immunity for the initiation and pursuit of a criminal prosecution, including presenting the state's case at trial or any other conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "In initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id.* at 431. This immunity applies even where the prosecutor acts "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986). The conduct the Plaintiff asserts establishes a claim against the prosecutor is conduct intimately associated with the judicial phase of the criminal process. The Supreme Court recently reaffirmed that prosecutors enjoy absolute immunity for such conduct. *Van De Kamp v. Goldstein*, 129 S. Ct. 855 (2009). Accordingly, the Plaintiff has no federal civil rights claim against any of the prosecutors he is suing in this case and those claims will be dismissed.

The Plaintiff's allegation that the attorneys were involved in a conspiracy against him does not state a claim that can proceed in this Court. As discussed above, both parties to the alleged conspiracy are immune from suit. Further, § 1983 does not punish conspiracy, but the denial of civil rights. *Goldshmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982). The right the Plaintiff claims was violated by the conspiracy is the right to a fair trial. However, the Plaintiff's success on this claim would be inconsistent with a valid conviction, and *Heck v. Humphrey*, 512 U.S. 477 (1994), prohibits civil litigation that would necessarily undermine a criminal conviction unless that conviction has been set aside by appeal, collateral review, or pardon. *Heck*, 512 U.S. at 486–87 (holding that courts must dismiss § 1983 actions to recover damages for harm caused by actions that would render a conviction invalid); *see also Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008) (stating that a § 1983 claim for a due process violation based on the denial of a fair criminal trial may be brought only after the conviction is set aside because the civil claim would otherwise impermissibly imply the invalidity of the outstanding conviction in violation of *Heck*).

### D.  Miscellaneous Claims

The Plaintiff maintains that Vandenburgh falsely testified in a deposition that a "robbery witness" identified him. Section 1983 did not abrogate the absolute witness immunity existing at common law. *Briscoe v. LaHue*, 460 U.S. 325, 335–36 (1983). The testimony of a witness is protected by absolute witness immunity. *See House v. Belford*, 956 F.2d 711, 720–21 (7th Cir. 1992); s*ee also Ienco v. City of Chi.*, 286 F. 3d 994 (7th Cir. 2002) (noting distinction between claims directed at allegedly perjurious testimony, which are trial-based and thus foreclosed by absolute immunity).

## CONCLUSION

For the foregoing reasons, the Court **DISMISSES** the Complaint pursuant to U.S.C. § 1915A because it fails to state a claim upon which relief may be granted, and seeks monetary relief against a defendant who is immune from such relief.

SO ORDERED on May 20, 2009.

     s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION